| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>**WONG FLEMING**<br>821 Alexander Road, Suite 150<br>Princeton, New Jersey 08540<br>Gregory Johnson, Esq.<br>(609) 951-9520<br>(609) 951-0270 Facsimile<br>gjohnson@wongfleming.com<br>*Proposed Counsel for Debtor and Debtor in Possession*<br><br>**DELBELLO DONNELLAN WEINGARTEN<br>WISE & WIEDERKEHR, LLP**<br>One North Lexington Avenue, 11th Floor<br>White Plains, New York 10601<br>Robert L. Rattet, Esq.<br>Dawn Kirby, Esq.<br>Julie Cvek Curley, Esq.<br>(914) 681-0200<br>(914) 684-0288 Facsimile<br>rrattet@ddw-law.com<br>dkirby@ddw-law.com<br>jcvek@ddw-law.com<br>*Proposed Co-Counsel for Debtor and Debtor in Possession* | |
| In re:<br><br>**LAFAYETTE YARD COMMUNITY<br>DEVELOPMENT CORPORATION,**<br><br>Debtor. | Chapter 11<br>Case No. |

**DEBTOR'S MOTION FOR AN INTERIM ORDER PURSUANT TO
11 U.S.C. §§ 105, 361, 362, AND 363 AND BANKRUPTCY RULE
4001 (I) AUTHORIZING THE DEBTOR TO USE CASH
COLLATERAL (II) GRANTING LIENS AND ADEQUATE
<u>PROTECTION, AND (III) SCHEDULING A FURTHER HEARING</u>**

To: Honorable Judge of the
United States Bankruptcy Court

Lafayette Yard Community Development Corporation ("**LYCDC**" or the "**Debtor**") the debtor and debtor-in-possession in the above captioned case, by and through their undersigned proposed counsel, hereby requests the entry of an Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and Bankruptcy Rule 4001 (i) Authorizing the Debtor to Use Cash Collateral, (ii) Granting Liens and Adequate Protection, and (iii) Scheduling a Further Hearing (the "**Motion**"). In support of the Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 361, 362 and 363 and Federal Rule of Bankruptcy Procedure 4001.

## BACKGROUND

1. On September 23, 2013 (the "**Petition Date**"), LYCDC filed a voluntary petition for relief (the "**Petition**") under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey.

2. The Debtor is continuing in possession of its property as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3. An official committee of unsecured creditors has not yet been formed in these cases.

2

4. The Debtor owns and operates a landmark hotel located at 1 West Lafayette Street, Trenton, New Jersey, the state's capital (the "**Facility**"). Set amidst the attractions of downtown Trenton, the hotel is within walking distance to the New Jersey State Capital Complex, the Old Barracks, the New Jersey Soldiers and Sailors War Memorial and other historic sites. LYCDC is an ideal hotel for family vacations; it is ideally situated near Sesame Place, Six Flags Great Adventure, Waterfront Park and home to Trenton Devils hockey team and Trenton Thunder Baseball Team. LYCDC is also an ideal meeting location, offering state-of-the-art meeting facilities, dining and event planning services.

## THE DEBTOR'S SECURED CREDITORS[1]

**A. The Series 2012 Bonds**

5. LYCDC obtained tax exempt bond funding to construct the Facility. Debt financing for the construction and acquisition of the hotel was specifically obtained with the issuance by LYCDC of bonds in 2000 in the approximate amount of $31,000,000 (the **"Series 2000 Bonds"**). The Series 2000 Bonds were subsequently refinanced by bonds issued by LYCDC in 2001 (the **"Series 2001 Bonds"**). The remaining principal balance of Series 2001 Bonds was refinanced by Hotel/Conference Center Project Revenue Refunding Bonds issued by LYCDC in 2012 (the **"Bonds"**). As if the Petition Date, Wells Fargo Bank, N.A. is the indenture trustee (together with any successor indenture trustee, the "**Bond Trustee**") for the Bonds.

6. The Bond Trustee has asserted, and the Debtor has acknowledged and agreed, that the Bond Trustee has, as of the Petition Date, a secured claim against the Debtor (the "**Bond Claim**") based on obligations of the Debtor associated with the Bonds. The Bonds were issued by the Debtor

---

[1] Other than to the extent set forth herein with respect to the Bond Trustee, the Bonds and the Bond Claim, the Debtor makes no representations or admissions as to the extent and validity of the liens asserted against it by various creditors described herein or those that later assert secured liens against the Debtor and the Debtor hereby reserves all rights to challenge said liens and preserve all defenses, set off rights and counterclaims they may have against said creditors.

3

pursuant to an *"Amended and Restated Resolution Authorizing the Issuance of Revenue Bonds of the Lafayette Yard Community Development Corporation",* as amended and supplemented by a *"First Supplemental Resolution Authorizing the Issuance of not to Exceed $34,500,000 Hotel/Conference Center Project Revenue Bonds"* and a *"Second Supplemental Resolution Authorizing the Issuance of not to Exceed $16,500,000 Hotel/Conference Center Project Revenue Refunding Bonds"*, as the same may be further amended from time to time (collectively, the "**Resolution**").

7. The Bond Trustee has asserted, and the Debtor has acknowledged and agreed, that the Bond Trustee has, as of the Petition, a valid and binding first priority lien and security interest in all of its real and personal property as security for the Debtor's obligations associated with the Bonds and Bond Claim (the "**Pre-Petition Bond Collateral**") not subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Pre-Petition Bond Collateral specifically includes without limitation first priority liens and security interests in (i) the real property, buildings, structures, fixtures and improvements associated with the Facility; and (ii) all tangible and intangible personal property of the Debtor wherever located, including, without limitation, the Debtor's accounts and accounts receivable and proceeds thereof. The Bond Trustee's liens and security interests are evidenced by, among other documents, the Resolution, a *"Mortgage and Security Agreement"* (the "**Mortgage**"), a *"Security Agreement"* (the "**Security Agreement**"), an *"Assignment of Leases and Rents"* (the "**Assignment of Leases**"), and an *"Assignment of Agreements"*, (the "**Assignment of Agreements**").[2] A portion of the initial proceeds of the Bonds was used to create debt service reserves and other funds under the Resolution (collectively with all

---

[2] The Resolution, Mortgage, Security Agreement, Assignment of Leases, Assignment of Agreements and all other documents evidencing or securing the Bonds are collectively referred to herein as the "Bond Documents"). The Bonds are also supported by obligations of the City of Trenton, New Jersey under a *"City Subsidy Agreement"*, as amended by a *"Reaffirmation of City Subsidy Agreement"* as the same may be further amended from time to time (collectively, the **"Subsidy Agreement").**

4

other funds held pursuant to the Resolution from time to time, the "**Bond Funds**"). As of the Petition Date, the balance of the Bond Funds was approximately $1,500,000. The Debtor, however, has no interest in any of the Bond Funds and such Bond Funds are not property of the Debtor's bankruptcy estate.

8. As of the Petition Date, the Bond Claim includes:

(i) Unpaid principal on the Bonds in the amount of $14,425,000;

(ii) Accrued but unpaid interest on the Bonds in the amount of $228,165.76; and

(iii) accrued and unpaid fees and expenses of the Bond Trustee and its professionals incurred through the Petition Date in the approximate amount of $50,000 (the "Prepetition Expense Claim").

**B.    Other Loan Debt Claims.**

9. As of the Petition Date the Debtor's books and records reflect loan obligations to other parties associated with the Facility that may be secured including: (a) a loan in the original principal amount of $2,000,000 from the New Jersey Economic Development Authority (the **"NJEDA Loan"**); (b) a loan in the original principal amount of $500,000 from the Capital City Redevelopment Corporation (the **"CCRC Loan"**), and (c) a loan in the original principal amount of $675,000 from the State of New Jersey (the **"State Loan"**). Any liens, security interests, rights and claims associated with the NJEDA Loan, CCRC Loan or State Loan are subject to and otherwise fully subordinate to the Bond Trustee's rights, liens and security interests in the Debtor's assets.

**RELIEF REQUESTED AND BASIS FOR RELIEF**

10. The Debtor submits this Motion for authority to use property which constitute Cash Collateral in which the Bond Trustee has, and the New Jersey Economic Development Authority (**"NJEDA"**), the Capital City Redevelopment Corporation (**"CCRC"**) and the State of New Jersey (the **"State"** and, collectively with the Bond Trustee, NJEDA and CCRC, the **"Secured Parties"**) have asserted security interests in said Cash Collateral, substantially in accordance with the terms

and conditions set forth in the proposed Interim Order Authorizing Use of Cash Collateral (the "Interim Order") attached hereto as **Exhibit "B."** The Debtor believes that the Secured Creditors are the only parties that hold or may hold a security interest in the Debtor's property which may constitute Cash Collateral.

11. The Debtor specifically proposes to use the Cash Collateral only for ordinary and necessary operating expenses and fees and expenses of its professionals in accordance with the operating budget annexed hereto as **Exhibit "A"** (the "Budget") and the Interim Order. The Debtor believes that the Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the ordinary course of business and in the administration of the Chapter 11 case for the period set forth in the Budget. The Debtor believes that the use of cash collateral in accordance with the Budget and Interim Order will provide the Debtor with adequate liquidity to pay administrative expenses as they become due and payable during the period covered by the Budget. The proposed Interim Order grants the Debtor the authority to use Cash Collateral pursuant to §§363 (c)(1) and (2) of the Bankruptcy Code and Bankruptcy Rule 4001(c) that is necessary to continue the operation of its business and to preserve the value of its estate pending a final hearing. The Interim Order provides that the Debtor's right to use cash collateral shall continue until the occurrence of a "Termination Events". As set forth more fully in the Order, Termination Events include, without limitation, the Debtor's payment or incurrence of expenses or amounts of a type not set forth in the Budget, the failure of the Debtor to pay undisputed administrative expenses in full in accordance with their terms as provided in the Budget, the Debtor's failure to comply with, keep or observe or perform any of its agreements or undertakings under the Interim Order, the dismissal or conversion of the bankruptcy case to a chapter 7 proceeding, the occurrence of an event of default under the DIP Facility (defined below), the Debtor's failure to comply with or take any action that is necessary to

6

ensure performance by the City under the Subsidy Agreement, and the commencement by the Debtor of any adversary proceeding or contested mater challenging the amount, validity, enforceability, priority or extent of the Bond Trustee's liens, security interests or claims.

12. The Bond Trustee has informed the Debtor that the Bond Trustee does not consent to the use of cash collateral except on the terms of the Interim Order. The Debtor believes that the terms of the Interim Order are fair and commercially reasonable, reflect the Debtor's prudent exercise of business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

13. § 363(a) of the Bankruptcy Code states as follows:

> "In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of properties subject to a security interest as provided in Section 552(b) of this title, whether existing before or after the commencement of a case under this title."

14. § 363(c)(1) of the Bankruptcy Code provides as follows:

> "(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing".

15. § 363(d) of the Bankruptcy Code provides as follows:

> "(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section only to the extent not inconsistent with any relief granted under section 362(c), 362(e), or 362(f) of this title".

16. Accordingly, pursuant to § 363(c)(2) of the Bankruptcy Code, the consent of the Secured Creditors, or authority from this Court is required to use cash collateral in which the Secured Creditors may hold a perfected priority security interest.

17. The purpose of adequate protection is to ensure that the secured creditor receives the value for which it bargained pre-bankruptcy. In re Swedeland Development Group, Inc., 16 F.3d 552 (3rd Cir. 1994); In re Dunes Casino Hotel, 69 B.R. 784, 793 (Bankr, D.N.J. 1986), citing In re Coors of the Cumberland, 19 B.R. 313 (Bankr. M.D. Tenn. 1982) See In re 495 Central Park Ave. Corp., 136 B.R. 626 (Bankr. S.D.N.Y. 1992). Adequate protection is designed to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization. In re Nice, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of the collateral").

18. Because the term "adequate protection" is not defined in the Bankruptcy Code, the precise contours of the concept are necessarily determined on a case-by-case basis. MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393 (10th Cir. 1987). In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1086); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Beker Industries Corp., 58 B.R. 725 (Bankr. S.D.N.Y. 1986); see also In re JKJ Chevrolet, Inc. 190 B.R. 542, 545 (Bankr. E.D.Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case).

19. The Interim Order provides that in addition to the existing rights and interests of the Bond Trustee and for the purpose of adequately protecting the Bond Trustee from Collateral Diminution[3], to the extent determined applicable in the future, the Bond Trustee is to be granted:

    a. A replacement perfected and enforceable continuing lien and security interest (the "Rollover Lien") to the extent of any diminution in the Pre-Petition Bond

---

[3] For purposes of this Order, "Collateral Diminution" shall mean any diminution in value of the Secured Creditor's interests in Debtor's property as of the Filing Date by reason of Debtor's use of Cash Collateral and other Pre Petition Bond Collateral and the imposition of liens in connection with the Debtor's incurring of a post petition loan (the **"DIP Facility"**) from [name of DIP Lender] (the **"DIP Lender"**).

8

        Collateral in all assets of the Debtor existing on or after the Petition Date of the same type as the Pre-Petition Bond Collateral, together with the proceeds, rents, products and profits thereof, whether acquired or arising before or after the Petition Date to the same extent, validity, perfection, enforceability and priority of the liens and security interests of the Bond Trustee as of the Petition Date (the "<u>Post Petition Bond Collateral</u>").  The Bond Trustee's Rollover Lien shall be subject to only the Carve Out, prior valid and perfected liens, if any, existing as of the Petition Date with priority over the Bond Trustee's liens and liens of the DIP Lender under the DIP Facility.

b.    A valid, perfected and enforceable continuing supplemental lien and security interest (the "<u>Supplemental Lien</u>") to the extent of any diminution in the Pre-Petition Bond Collateral in all of the assets of the Debtor of any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code to the extent the same is not otherwise Post-Petition Bond Collateral, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof (the "<u>Supplemental Collateral</u>" and, collectively with the "<u>Post-Petition Bond Collateral</u>", the "<u>Collateral</u>").  Subject to and upon the entry of an order by the Court approving the Cash Collateral Motion on a final basis (the "<u>Final Order</u>"), Collateral shall include any causes of action or proceeds thereof under Sections 544 through 550 and 724(e) of the Bankruptcy Code.  The Supplemental Lien shall be subject to only the Carve Out, prior valid and perfected liens, if any, existing as of the Petition Date, with priority over the liens of the Bond Trustee and liens of the DIP Lender under the DIP Facility.

    c.    Subject to the Carve Out, a super-priority administrative expense claim pursuant to Bankruptcy Code Section 507(b) to the extent of any diminution in the Pre-Petition Bond Collateral against all Collateral, assets of the Debtor's estate and the Debtor's rights, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual which for any reason cannot not be made the subject of the Collateral (the "Superpriority Claims"). Except for the Carve-Out and claims of the DIP Lender under the DIP Facility, the Superpriority Claims shall have priority over any and all administrative expenses, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee or any creditor, in this Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof.

20. As adequate protection and in consideration for the use of Cash Collateral and other Pre-Petition Collateral by the Debtor and the DIP Facility, the Debtor has also agreed that the Bond Trustee is also granted the following adequate protection:

    a.    Compliance with the Subsidy Agreement;

    b.    Periodic financial reporting;

    c.    Compliance with the Bond Documents, except for provisions directly relating to the payment by the Debtor of debt service, the Debtor's financial covenants, and, solely as they relate to the DIP Facility, the incurrence of additional debt and limitations on the grant of liens and other encumbrances; and

    d.    Restrictions against the grant of liens on, or security interests in the Pre-Petition Bond Collateral or the adequate protection collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise.

21. The Interim Order provides that as adequate protection and in consideration for the use of any Cash Collateral and other collateral associated with the NJEDA Loan, CCRC Loan and State Loan by the Debtor and the DIP Facility, the holders thereof are each granted:

    a.    A replacement perfected and enforceable continuing lien and security interest (the "Replacement Lien") to the extent of any diminution in any pre-petition collateral of such holder in all assets of the Debtor existing on or after the Petition Date of the same type as such holder's pre-petition collateral, together with the proceeds, rents, products and profits thereof, whether acquired or arising before or after the Petition Date to the same extent, validity, perfection, enforceability and priority of the liens and security interests of such holder as of the Petition Date. Each Replacement Lien shall be subject to only the Carve Out, liens of the Bond Trustee, prior valid and perfected liens, if any, existing as of the Petition Date with priority and liens of the DIP Lender under the DIP Facility; and

    b.    Subject to the Carve Out, a super-priority administrative expense claim pursuant to Bankruptcy Code Section 507(b) to the extent of any diminution in the such

holder's collateral, assets of the Debtor's estate and the Debtor's rights, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual which for any reason cannot not be made the subject of the Replacement Lien (the "<u>Additional Superpriority Claims</u>").  Except for the Carve-Out, the Superpriority Claims and claims of the DIP Lender under the DIP Facility, the Additional Superpriority Claims shall have priority over any and all administrative expenses, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee or any creditor, in this Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof.

22. In consideration of the Debtor's acknowledgement of the Bond Claims and the Debtor's waiver of any claims under Section 506(c) of the Bankruptcy Code with respect to the Secured Creditors, the Bond Trustee is consenting to a carve out for certain expenses and professional fees incurred during the pendency of the bankruptcy case which shall be superior in all instances to the liens and claims of the Bond Trustee and all other parties (the **"Carve Out"**).  For

purposes hereof, the "Carve Out" means fees and expenses of professionals retained by the Debtor or a Committee (subject to the limitations of paragraph 4) in an aggregate amount not to exceed the sum of: (i) the dollar amount of such fees and expenses to the extent (a) incurred or accrued prior to a Termination Event (whether paid or unpaid); (b) provided for under the Budget; and (c) previously or subsequently allowed by court order; plus (ii) $50,000; plus (iii) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of the Bankruptcy Court. Nothing herein shall constitute a waiver of any right of the Bond Trustee or other Secured Parties to object to fees and expenses of any professionals or to challenge any assertion that any amount of the fees and expenses remain unpaid. The entry of a Final Order shall be a conclusive and binding determination on all parties that except for the Carve Out and payments to the DIP Lender with respect to the DIP Facility, no costs or expenses of administration shall be imposed against the Bond Trustee or the Pre-Petition Bond Collateral or the Collateral under Sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

23.     The Interim Order includes a release by the Debtor as to the Bonds, the Bond Documents and provides that the Interim Order is binding on all creditors and parties and interest, but permits an official committee of unsecured creditors appointed in these proceedings (a **"Committee")** an opportunity to use not more than $10,000 of the Cash Collateral to investigate the validity, priority, perfection and enforceability of the Bond Trustee' liens in the Pre-Petition Bond Collateral and an opportunity to challenge the validity, amount, perfection, priority, extent or enforceability of the Bond Claim or the pre-petition security interests of the Bond Trustee, so long as any such challenge is made on or before the earliest to occur of: 75 days from the appointment of a Committee, 75 days after the entry of the Interim Order, or 90 days from the Petition Date. The Debtor has reserved all rights and defenses as to other parties. The Interim Order also provides that

13

the automatic stay is vacated and modified to, inter alia, apply, allocate or pay from any of the funds or accounts maintained by the Bond Trustee, and permit any action specifically authorized or contemplated by the Interim Order.

24. The proposed adequate protection is appropriate because it is designed to protect the respective Secured Creditors to the extent required and ultimately determined applicable, against diminution in the value of the Secured Creditor's respective interests in the Cash Collateral. As such, under the terms and provisions of the Interim Order, the Secured Creditor's respective interests in the Cash Collateral, if any, is adequately protected.

## REQUEST FOR WAIVER OF STAY

25. The Debtor further seeks a waiver of the stay of the effectiveness of the Interim Order, and any subsequent Order, that may be imposed by any applicable Bankruptcy Rule. As set forth above, the use of Cash Collateral is essential to prevent potentially irreparable damage to the Debtor's operations, value and ability to reorganize. Accordingly, the Debtor submits that sufficient cause exists to justify a waiver of any stay imposed by the Bankruptcy Rules, to the extent applicable.

## REQUEST FOR HEARING ON SHORTENED NOTICE FOR INTERIM RELIEF

26. In connection with the relief requested in the Motion herein, the Debtor is seeking a hearing on shortened notice to consider authority to, *inter alia*, use the cash collateral of the Secured Creditors on an interim basis pursuant to §§363(c)(2) and 361 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001.

27. The immediate and continued use of cash collateral is essential to the operation of the Debtor's business and value of its assets, and will not only preserve the estate but will help to maximize its value for the benefit of its creditors. Without the immediate, pre-final hearing authority

to use cash collateral on an interim basis and pending the final hearing, the Debtor will not be able to make payroll and other imminent and necessary expenses to sustain its operations.

28. If the Debtor is not permitted to immediately use cash collateral, the Debtor's business will be in jeopardy by virtue of the Debtor's inability, under such circumstances, to pay its employees and the daily costs and expenses associated with its daily business operations. As such, the Debtor submits that its request for interim use of cash collateral herein is reasonable, proper and in the best interests of its creditors.

29. The Debtor therefore desires to obtain authority to use cash collateral of the Secured Creditor on an interim basis pending a final hearing, pursuant to and in accordance with the Budget.

30. The Bankruptcy Rules provide for a shortening of time under certain circumstances. Bankruptcy Rule 9006(c) provides as follows:

> (c) *Reduction.*
>
> (1) *In General*. Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.
>
> (2) *Reduction Not Permitted*. The court may not reduce the time for taking action under Rules 2002 (a)(4) and (a)(8), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 8002, and 9033(b).

31. Thus, the Bankruptcy Rules specifically authorize the Court to hear a motion such as the Motion herein on shortened notice, for cause shown.

32. The Debtor respectfully submits that sufficient cause exists for scheduling a hearing on shortened notice to consider the Motion and refers the Court to the Affidavit of Joyce Kersey Pursuant to Local Bankruptcy Rules 1007-2 and 9077-1 in support of an order scheduling hearing on shortened notice on First Day Motions, which is on file on the Court's docket.

15

33. Notice of this Motion will be provided as set forth in the Order Scheduling Hearing to be entered by the Court. The Debtor submits that said notice is adequate and proper.

34. In the event the Court does not find cause to shorten the notice period for this Motion, this Motion will be provided on twenty-one (21) days notice to (i) Office of the United States Trustee; (ii) parties who have filed notices of appearance; and (iii) all creditors. The Debtor submits that said notice is adequate and proper.

## NOTICE WITH RESPECT TO FINAL ORDER

35. Pursuant to Bankruptcy Rule 4001, the Debtor respectfully requests that it be authorized to provide notice of the Final Hearing on this Motion by serving a copy of the Motion (to the extent not previously served), together with the Interim Order, in accordance with the terms provided in the Interim Order.

36. The cost of mailing a notice to the Debtor's unsecured creditors would be exceedingly expensive, and would not, in the Debtor's view, confer any substantial benefit on the Debtor, its estate or its creditors. Accordingly, and in light of the urgency of the relief requested, the Debtor respectfully requests that any further notice of the Final Hearing, and of the relief requested, other than as provided for in this Motion, be dispensed with and waived.

## NO PREVIOUS RELIEF REQUESTED

37. The Debtor has not previously sought the relief requested herein from this Court or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) GRANT the Motion, (ii) enter the Interim Order, substantially in the form attached hereto, granting the relief requested; (iii) set the Final Hearing; and (iv) grant such other and further relief as is just and proper.

Respectfully Submitted,

**WONG FLEMING**
*Proposed Counsel to the Debtor and Debtor-in-Possession*

By:  /s/ Gregory G. Johnson
     Gregory G. Johnson, Esquire.

-and-

**DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP**
*Proposed Co-Counsel to the Debtor and Debtor-in-Possession*

By:  /s/ Robert L. Rattet
     Robert L. Rattet, Esquire

Dated: September 23, 2013