UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**
**WONG FLEMING**
821 Alexander Road, Suite 200
Princeton, New Jersey 08540
Gregory Johnson, Esq.
(609) 951-9520
(609) 951-0270 Facsimile
gjohnson@wongfleming.com
*Counsel for Debtor and Debtor in Possession*

**DELBELLO DONNELLAN WEINGARTEN**
**WISE & WIEDERKEHR, LLP**
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
Jonathan S. Pasternak, Esq.
Julie Cvek Curley, Esq.
(914) 681-0200
(914) 684-0288 Facsimile
jpasternak@ddw-law.com
jcvek@ddw-law.com
*Co-Counsel for Debtor and Debtor in Possession*

In re:

**LAFAYETTE YARD COMMUNITY**
**DEVELOPMENT CORPORATION,**

                              Debtor.

Chapter 11
Case No. 13-30752 (MBK)

**DEBTOR'S MOTION FOR ORDER (I) AUTHORIZING A PRIVATE**
**SALE OF THE DEBTOR'S ART TO EDISON HOLDINGS LLC FREE**
**AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES**
**AND OTHER INTERESTS, (II) SCHEDULING AN EXPEDITED**
<u>**HEARING ON THE MOTION, AND (III) GRANTING RELATED RELIEF**</u>

**TO:    THE HONORABLE MICHAEL B. KAPLAN,**
        **UNITED STATES BANKRUPTCY JUDGE:**

Lafayette Yard Community Development Corporation ("**LYCDC**" or the "**Debtor**") the

debtor and debtor-in-possession in the above captioned case, by and through their undersigned

counsel, hereby submits this motion (the "**Motion**") pursuant to sections 105(a), 363(b), (f) and

(m), 365, 503, 507, 1146(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the

"**Bankruptcy Code**"), Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (g), 6006(a) and 9c), 9007 and

9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1

and 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of New Jersey

(the "**Local Rules**") and General Order for the United States Bankruptcy Court for the District of

New Jersey Adopting Guidelines for Sale of Estate Property dated November 25, 2009 (the

"**Guidelines**"), for entry of an order authorizing the private sale of the Debtor's Art (as defined

hereinbelow) to Edison Holdings, LLC, and scheduling a hearing on shortened notice on the

Motion.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      This proceeding has been initiated pursuant to Bankruptcy Code §§ 105(a),

363(b), (f) and (m), 365, 503, 507, 1146(a), Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f)

and (g), 6006(a) and 9c), 9007 and 9014, and Local Rules 2014-1 and 6004-1.

## BACKGROUND

4.      On September 23, 2013, (the "**Filing Date**"), the Debtor filed a voluntary petition

for relief under Chapter 11 of the Bankruptcy Code.  Thereafter the Debtor's proceeding was

referred to this Court for administration under the Bankruptcy Code.

5.      The Debtor has continued as a Debtor-in-Possession pursuant to §1107 and 1108

of the Bankruptcy Code.

6.      No trustee, examiner or creditors' committee has been heretofore appointed in this

proceeding.

7.      The Debtor owned and operated the Lafayette Yard Hotel and Conference Center,

formerly the Trenton Marriott Hotel (the "**Hotel**") located at 1 West Lafayette Street, Trenton,

New Jersey, the State's capital.

8.      On October 16, 2013, the Debtor  filed its Motion For Order (i) Authorizing the

Sale of Substantially all of the Debtor's Assets Free and Clear of all Liens, Claims, Interests, and

Encumbrances, (ii) Authorizing the Assumption and Assignment and, Rejection, as Applicable, of

Certain Executory Contracts and Leases in Connection Therewith, (iii) Granting the Successful

Bidder Good Faith Status, (iv) Waiving the Fourteen Day Stay of the Sale Order, and (v) Granting

Related Relief [ECF No. 79] (the "**Sale Motion**").

9.      On October 25, 2013, the Court entered an order approving, among other things,

Bidding Procedures, break-up fee in connection with proposed sale of substantially all assets of

the estate (the "**Sale**"), the form and manner of the sale notice, the scheduling of an auction and

sale hearing, the scheduling of certain deadlines, and the procedures for determining cure costs

[ECF No. 121].

10.     An auction was conducted on November 25, 2013, with competing bids having

taken place at that time. The bid of Edison Holdings LLC ("**Buyer**") in the amount of

$6,000,000.00 pursuant to the Amended Asset Purchase Agreement dated December 5, 2013 (the

"**Amended APA**") was found to be the highest and best bid, which was approved at a hearing

held on November 26, 2013 pursuant an order entered on December 6, 2013 [ECF No. 187].

11.     The Sale closing occurred on December 16-17, 2013, realizing gross proceeds of

$6,180,000, which includes $180,000 held in escrow by the Debtor as security towards post-

closing charges for all contracts related to the Veolia agreement.

12.     Prior to the Sale, the Debtor obtained an appraisal for all of the art owned by the

Debtor at the Hotel (the **"Appraisal"**). A copy of the Appraisal is annexed hereto as **Exhibit**

**"A."**

13.    Under the Amended APA, Section 1.2(b) title "Excluded Property", the below

described art assets of the Debtor were excluded from the Sale to Buyer:

> (viii)    All original Thomas Malloy paintings and any artwork
> appearing on the conference room walls having a value of $1,000 or
> greater, subject to the right of Purchaser to purchase any such works (other
> than the original Thomas Malloy artworks) for their respective appraised
> value. Seller shall identify, appraise and inventory the artwork specified in
> this Section 1.2(b)(viii) within 30 days of execution of this Agreement.
> Purchaser may elect such artwork (other than the original Thomas Malloy
> artworks) it desires to purchase at any time prior to Closing, and the
> Purchase Price will be adjusted accordingly

14.    As set forth in Section 1.2(b)(viii) of the Amended APA, the Buyer had the option

to purchase the Art from the Debtor.

15.    The Buyer has reviewed and inventoried the art excluded from the Sale under

Section 1.2(b)(viii) of the APA and has determined that twelve (12) pieces of art were excluded

from the Sale (the "Art") and Buyer now desires to purchase the Art. Specifically, the Buyer will

be purchasing the following the Art for $26,000, itemized as follows:

> (i)    Tom Malloy original watercolor painting titled *Early Country Fall* -
> $1,500 marketable cash value;
>
> (ii)    Tom Malloy original watercolor painting titled *House and Barn* -$1,100
> marketable cash value;
>
> (iii)    Tom Malloy original watercolor painting titled *Street Scene* - $1,500
> marketable cash value;
>
> (iv)    Tom Malloy original watercolor painting titled *Tree* - $1,500 marketable
> cash value;
>
> (v)    Tom Malloy original watercolor painting titled *Unknown Winding Road* -
> $900 marketable cash value
>
> (vi)    Robert MaGaw original oil on canvas *Untitled* - $2,750 marketable cash
> value;
>
> (vii)    Stan Kephart original acrylic on canvas titled *Trenton View of Battle
> Monument* - $3,400 marketable cash value;

    (viii)    Stan Kephart original acrylic on canvas titled *Trenton View of the State House from Hanover Street* - $3,400 marketable cash value;

    (ix)    Stan Kephart original acrylic on canvas titled *View of Trenton*- $1,875 marketable cash value;

    (x)    Thomas Kelly original acrylic on canvas titled *Kind of Shy* - $1,600 marketable cash value;

    (xi)    Thomas Kelly original acrylic on canvas titled *Piano Bar* - $1,600 marketable cash value;

    (xii)    Lou Kennels original oil on canvas titled *Red Roof Delaware* - $1,425 marketable cash value;

    (xiii)    Lou Kennels original oil on canvas titled *Road Up River*- $1,425 marketable cash value; and

    (xiv)    Jerry Cable original oil on canvas titled *Red Barn* - $1,750 marketable cash value.

## RELIEF REQUESTED AND BASIS FOR RELIEF

16.    The Debtor consummated on the sale of its Assets to the Buyer on December 16-17, 2013. The Debtor no longer continues to operate the Hotel or conduct business and is continuing to liquidate its assets in an orderly fashion. As such, the Debtor is seeking to sell the Art to the Buyer, as set forth in the terms in the Amended APA.

17.    As set forth in the Appraisal, and as summarized above, the value of the Art the Debtor seeks to sell to the Buyer has a marketable cash value of $25,725. As such, the Buyer's offer of $26,000 to purchase the Art is above the marketable cash value, and the Debtor believes is the best and highest value it can obtain for the Art.

18.    The Debtor has consulted with the art broker that prepared the Appraisal. If the Debtor were to sell the Art on the open market, there is a possibility that the Debtor could not obtain even the marketable cash value of there are for two (2) main reasons. First, the Debtor's Art would be new inventory that would flood the market and therefore drive the value of the Art down. Secondly, the artists are local artists who are appealing to the local community, and as such the value of the Art would not transcend outside of the Trenton community. It is therefore submitted that, in light of the

circumstances, there is sufficient cause to permit a private sale of the Art.

19.     While many section 363 sales are conducted under competitive bidding procedures, there is no requirement in section 363 of the Bankruptcy Code to do so.

20.     In fact, Bankruptcy Rule 6004(f) specifically contemplates private sales with the statement that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction".  Here, the Debtor and presumably the Creditors Committee support the private sale.

21.     Courts have noted that private sales are appropriate under section 363 in circumstances similar to the instant case. *See In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) ("Unlike judicial sales under the Bankruptcy Act, the sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion to conduct public or private sales of estate property."); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect sales of estate property pursuant to section 363 of the Bankruptcy Code, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction").  Accordingly, courts have approved private sales of assets when they think the general standards for approval under section 363 of the Bankruptcy Code are satisfied. See, e.g., *In re Wellman, Inc.*, Case No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2009) (order approving the sales of one of the debtors' facilities' by private sale, not subject to higher and better offers); *In re Delta Air Lines, Inc*., Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Nov. 29, 2005) (order authorizing the sale of certain aircraft by private sale and stating that "no auction was necessary with respect to sale of the [a]ircraft").

22.     Given the Appraisal of the Art and the significant cash purchase price being offered by the Buyer, the Debtor believes that the private sale is justified and the best way to maximize value of the Art.

23.     It is extremely unlikely that an overbid process will generate higher and better offers for the Debtor's Art. Conducting even an expedited overbid process would impose significant carrying costs on the Debtor's estate which the Debtor will have no ability to pay.

24.     It is submitted that the Debtor and the Buyer, in full consultation with the Committee and the secured creditors, are proceeding in good faith and at arms' length. The Buyer is not an insider of the Debtor and the transaction was negotiated in good faith and only entered into after protracted negotiations.

25.     Section 363(b) of the Bankruptcy Code provides, in pertinent part, that the Debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate". 11 U.S.C. §363(b)(1). Inasmuch as the Art constitutes the Debtor's business assets, the proposed sale is out of the ordinary course of the Debtor's business.

26.     Section 363 does not set forth an express standard for determining whether a sale of property under §363(b) should be approved; however, courts that have interpreted this section consistently apply an "articulated business judgment" standard. *See, Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983).

27.     Section 363(b) does not require that the Court substitute its business judgment for that of the Debtor, *See, e.g., Ionosphere Clubs*, 100 B.R. at 676 (court will not substitute a hostile witness's business judgment for a debtor's, unless testimony "established that the [debtor] had failed to articulate a sound business justification for its chosen course"). Rather, the Court should ascertain whether a debtor has articulated a valid business justification for the proposed transaction. This is consistent with "the broad authority to operate the business of the Debtor . . . [which] indicates congressional intent to limit Court involvement in business decisions by a Trustee . . . [so that] a

Court may not interfere with a reasonable business decision made in good faith by a Trustee". *In re Airlift Int'l, Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982).

28.     Other courts have approved the sale of a debtor's assets under §363(b)(1) of the Bankruptcy Code when (i) the sale is supported by the sound business judgment of the debtor's management; (ii) interested parties are provided with adequate and reasonable notice; (iii) the sale price is fair and reasonable; and (iv) the purchaser has acted in good faith. *See, e.g., In re Betty Owens Schools, Inc.*, WL 188127 at *4 (S.D.N.Y. 1997) (setting forth the foregoing four elements in connection with the 363(b)(1) inquiry and citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *In re General Bearing Corp.*, 136 B.R. 361, 365-66 (Bankr. S.D.N.Y. 1992) (suggesting that the salient factors under *Lionel* are the foregoing elements). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Ames Dept. Stores, Inc.*, 136 BR 357, 359 (Bankr. S.D.N.Y. 1992); *In re Integrated Resources, Inc.*, 147 B.R. at 656-57 (S.D.N.Y. 1992) (a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate).

29.     Here, an immediate sale of the Debtor's Art is the best option that will maximize recovery to creditors on the remaining assets. Any additional delay or marketing will deplete the recovery to the Debtor's estate and minimize the recovery on the value of the Art to the detriment of the creditors.

30.     The Debtor believes that the sale to the Buyer represents a prudent and proper exercise of its business judgment and is supported by articulated business reasons because, absent such a sale, the Debtor would forego the $30,000 Purchase Price and in its place have only a small amount of auction proceeds of its minor Art.  *See, NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) (the "fundamental purpose of reorganization is to prevent the debtor from going into liquidation, with

an attendant loss of jobs and possible misuse of economic resources"); *In re Chateaugay Corp.*, 201 B.R. 48, 72 (Bankr. S.D.N.Y. 1996), *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1997) ("public policy, as evidenced by Chapter 11 of the Bankruptcy Code, strongly favors the reorganization and rehabilitation of troubled companies and concomitant preservation of jobs and going concern values"). Without the sale, the Debtor will leave creditors with far less than the amounts they are likely to receive from the proposed sale of the Art.

31.    The sale to Buyer represents the highest and best price for the Art secured by the Debtor to date. Consequently, in the Debtor's view, the Purchase Price represents substantial value to the Debtor's estate and provides favorable terms for disposition of the Art as a going concern in exchange for fair and reasonable consideration. *See, Mellon Bank N.A. v. Metro Communications, Inc.*, 945 F.2d 635 (3d Cir. 1992); *See, also, Mellon Bank N.A. v. Official Comm. Of Unsecured Creditors*, 92 F.3d 139 (3d) Cir. 1996). Moreover, the Debtor's and Creditor's Committee respective arm's length negotiations with the Buyer ensured that the ultimate purchase price secured for the Art is fair and reasonable under the circumstances.

32.    As set forth above, this transaction is the product of good faith, arm's length negotiations between unrelated parties. Consequently, the Debtor requests that this Court find that these negotiations were in good faith and that the Purchaser is a "good faith purchaser" under §363(m) of the Bankruptcy Code.

33.    In addition to seeking approval of a private sale outside of the ordinary course of business, the Debtor seeks approval to sell its assets free and clear of any and all liens, claims or encumbrances in accordance with §363(f) of the Bankruptcy Code. A debtor-in-possession may sell property to §§363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions are satisfied:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such

interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than

the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money

satisfaction of such interest.

11 .S.C. §363(f).

34.     The proceeds of the sale of the Art to the Buyer will be paid to the Debtor's secured

obligations the Bond Trustee (as defined in the Sale Motion). Thus, the Art can be sold free and clear

of the secured claims and/or liens.

## REQUEST PURSUANT TO LOCAL BANKRUPTCY RULE
## 9077 FOR HEARING TO CONSIDER ENTRY OF THE
## BIDDING PROCEDURES ORDER ON SHORTENED NOTICE
## PURSUANT TO BANKRUPTCY PROCEDURE 9006(C)

35.     As set forth above, the Debtor is no longer in business and urgently needs to

dispose of its only remaining asset, the Art.

36.     Therefore, the Debtor hereby requests that the Court enter order shortening time

pursuant to Rule 9006(c) of the Federal Rules of Bankruptcy Procedure to consider entry

approval of the private sale of the Art to the Buyer.

37.     The Federal Rules of Bankruptcy Procedure provide for a shortening of time

under certain circumstances.

38.     Federal Rule of Bankruptcy Procedure 9006(c) provides as follows:

(c) *Reduction.*

(1) *In General*. Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of

court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.

(2) *Reduction Not Permitted*. The court may not reduce the time for taking action under Rules 2002 (a)(4) and (a)(8), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 8002, and 9033(b).

39.    Thus, the Federal Rules of Bankruptcy Procedure specifically authorize the Court to hear an application such as the Motion herein on shortened notice, for cause shown.

40.    The Debtor respectfully submits that sufficient cause exists for scheduling a hearing on shortened notice to consider the Motion and refers the Court to the Affidavit of Julie Cvek Curley pursuant to Local Bankruptcy Rules 1007-2 and 9077-1 in support of a hearing on shortened notice on the Motion ("9077-1 Affidavit") annexed hereto as **Exhibit "B"**.

## NOTICE

41.    Notice of this Motion has been provided to (i) the Office of the U.S. Trustee; (ii) the Debtor's secured creditors and their respective counsel; (iii) all taxing authorities; (iv) counsel to the Buyer, (v) counsel to the Creditors' Committee; and (vi) all creditors. The Debtor submits that said notice is adequate and proper.

## NO PRIOR REQUEST

42.    No prior Motion for the relief requested herein has been made to this or any other Court.

## CONCLUSION

43.    For all of the foregoing reasons, the Debtor respectfully requests entry of an Order approving the sale of the Art to the Buyer.

**WHEREFORE,** the Debtor respectfully requests that the Court grant all of the relief

requested herein, together with such other and further relief as is just and proper under the

circumstances.

Respectfully Submitted,

**WONG FLEMING**
*Counsel to the Debtor and Debtor-in-Possession*

By:   /s/ Gregory G. Johnson
          Gregory G. Johnson, Esq.

                           -and-

**DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP**
*Co-Counsel to the Debtor and Debtor-in-Possession*

By:   /s/ Julie Cvek Curley
          Julie Cvek Curley, Esq.


Dated: January 1, 2014