| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>**WONG FLEMING**<br>821 Alexander Road, Suite 200<br>Princeton, New Jersey 08540<br>Gregory Johnson, Esq.<br>(609) 951-9520<br>(609) 951-0270 Facsimile<br>gjohnson@wongfleming.com<br>*Counsel for Debtor and Debtor in Possession*<br><br>**DELBELLO DONNELLAN WEINGARTEN<br>WISE & WIEDERKEHR, LLP**<br>One North Lexington Avenue, 11th Floor<br>White Plains, New York 10601<br>Jonathan S. Pasternak, Esq.<br>Julie Cvek Curley, Esq.<br>(914) 681-0200<br>(914) 684-0288 Facsimile<br>jpasternak@ddw-law.com<br>jcurley@ddw-law.com<br>*Co-Counsel for Debtor and Debtor in Possession* | |
| In re:<br><br>**LAFAYETTE YARD COMMUNITY<br>DEVELOPMENT CORPORATION,**<br><br>                              Debtor. | Chapter 11<br>Case No. 13-30752 (MBK) |

**DEBTOR'S MOTION FOR ORDER AUTHORIZING AND
APPROVING THE DEBTOR'S KEY EMPLOYEE RETENTION
PLAN PURSUANT TO 11 U.S.C. SECTION 363 (b)(1) and 503(c)(3)**

**TO:    THE HONORABLE MICHAEL B. KAPLAN,
        UNITED STATES BANKRUPTCY JUDGE:**

Lafayette Yard Community Development Corporation ("**LYCDC**" or the "**Debtor**") the

debtor and debtor-in-possession in the above captioned case, by and through their undersigned

counsel, hereby files this Motion (the "**Motion**") requesting the entry of an Order authorizing the

Debtor to pay Joyce Kersey, Chairwoman of the Debtor's Board of Trustees (the "**Board**"), a stipend for work performed in this chapter 11 case pursuant to §§363(b)(1) and 503(c)(3) of title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*. (the "**Bankruptcy Code**"). In support of the Motion, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

1.  In the first ninety (90) days of this case, the Debtor secured a DIP loan to sustain and stabilize its operations and thereafter underwent a national marketing campaign, culminating in a live auction and sold its Hotel. The success of the sale and the implementation of the Debtor's strategy could not have been accomplished without the tireless efforts of the chairwoman of the Debtor's Board of Trustees, Joyce Kersey. Ms. Kersey has literally worked seven days a week, unpaid to date, to ensure that the Debtor's Hotel was sold for a maximum dollar, and supervised every single expense incurred by the Debtor, to ensure that there were no unwarranted, unearned payments, and that the Debtor's sale proceeds were maximized in a fair manner to the Debtor's creditors.

2.  In order for Ms. Kersey to continue at the helm of the Debtor's Board, she was required, at the request of the Office of the U.S. Trustee, to choose between remaining on the Board of the Debtor, which she realized required daily supervision, or remaining on the Board of the Trenton Parking Authority, which was a much less demanding position. Ms. Kersey, acknowledging that as the Chairwoman of the Board of the Debtor she was the best position to continue managing the Debtor's affairs together and that any managerial changes would disrupt the tight timeline proposed to sell the Hotel, decided it was in the best interests of the Debtor to

remain on the Debtor's board and instead resign from the Board of the Trenton Parking Authority.

3. Recognizing the negative impact to the value of the Debtor's assets if Ms. Kersey were to leave during the sale process, which would delay and reduce the realization of sale of the Debtor's sale of the assets, the Debtor's board determined that the implementation of a retention program for Ms. Kersey was in the best interests of the Debtor's estate and all parties in interest. In that regard, the Board is seeking approval to implement a key employee retention plan (the "KERP") for Ms. Kersey. As a result, the Board approved a plan to make available $40,000 for bonus payments to Ms. Kersey to incentivize her to continue as the Chairwoman of the Board of the Debtor and complete the wind-down of this case and the Debtor's affairs.

4. Now that the Debtor has sold its Assets, it will begin the wind-down of its affairs, Since the Debtor sold the Hotel and is no longer an operating entity, it has disengaged the services of its management company. The Debtor, as a not-for-profit public entity, does not have any employees and its Board consists of unpaid volunteers. Ms. Kersey has been chosen, and has accepted the task, of being the sold executive to complete the wind-down of the Debtor's affairs

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363 and 503(c) and Federal Rule of Bankruptcy Procedure 4001.

## BACKGROUND

4. On September 23, 2013 (the "**Petition Date**"), LYCDC filed a voluntary petition for relief under chapter 11 the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the **"Case"**).

5. The Debtor is continuing in possession of its property as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

6. The Debtor owned and operated a landmark hotel located at 1 West Lafayette Street, Trenton, New Jersey, the state's capital (the "**Hotel**").

7. The Debtor filed its Chapter 11 petition with the principal objective to reorganize through the marketing and competitive sale of its assets and business as a going concern under Bankruptcy Code § 363. On the Petition Date, the Debtor has insufficient cash to maintain business relationships with its vendors, suppliers, customers and employees, and, in the event that any or all of those relationships are adversely affected by the commencement of this Case, the Debtor will most likely face the prospect of having insufficient cash to finance its operations, to pay its employees and to accomplish its goals for this Case, which was to preserve the Hotel pending an aggressive nationwide marketing campaign and ultimate sale.

8. On September 23, 2013, the Debtor filed a motion to obtain up to $2 million in debtor-in-possession financing in order to sustain operations and preserve the going concern value of the Hotel for the benefit of its creditors pending the sale [ECF No. 8](the "**DIP Motion**"). The DIP Motion was approved first on an interim basis pursuant to an Order dated September 26, 2013 [ECF No. 27], and later on a final basis pursuant to an Order dated October 17, 2013 [ECF No. 90].

9. On October 16, 2013, the Debtor filed its Motion For Order (i) Authorizing the Sale of Substantially all of the Debtor's Assets Free and Clear of all Liens, Claims, Interests, and Encumbrances, (ii) Authorizing the Assumption and Assignment and, Rejection, as Applicable, of Certain Executory Contracts and Leases in Connection Therewith, (iii) Granting the Successful Bidder Good Faith Status, (iv) Waiving the Fourteen Day Stay of the Sale Order, and (v) Granting Related Relief [ECF No. 79] (the "**Sale Motion**").

10. On October 25, 2013, the Court entered an order approving, among other things, Bidding Procedures, break-up fee in connection with proposed sale of substantially all assets of the estate (the "**Sale**"), the form and manner of the sale notice, the scheduling of an auction and sale hearing, the scheduling of certain deadlines, and the procedures for determining cure costs [ECF No. 121].

11. An auction was conducted on November 25, 2013, with competing bids having taken place at that time. The bid of Edison Holdings LLC ("**Buyer**") in the amount of $6,000,000.00 pursuant to the Amended Asset Purchase Agreement dated December 5, 2013 (the "**Amended APA**") was found to be the highest and best bid, which was approved at a hearing held on November 26, 2013 pursuant an order entered on December 6, 2013 [ECF No. 187].

12. The Sale closing occurred on December 16-17, 2013, realizing gross proceeds of $6,180,000, which includes $180,000 held in escrow by the Debtor as security towards post-closing charges for all contracts related to the Veolia agreement.

13. The Debtor has accomplished more in the first ninety days of this case than most Debtor accomplish in the first six months of a case.

14. Now that the Hotel has been successfully sold, the main responsibility of the Debtor of overseeing the operations of the hotel and management company has ceased. The Debtor has agreed to dissolve the corporation by delegating the wind down duties and responsibilities to Chairwoman Joyce Kersey, including but not limited to winding down the Debtor ending in the dissolution approved by the bankruptcy court and the formal filing of a Certificate of Dissolution to be filed with the NJ Department of treasury, office of Commercial Recording.

## RELIEF REQUESTED AND BASIS FOR RELIEF

15. By this motion (the "Motion"), the Debtors seek entry of an order, (a) approving the Debtor's KERP for Ms. Kersey as described herein and (b) authorizing the Debtor to make payments pursuant to the KERP to Ms. Kersey.

16. The Debtor's Board is a voluntary, unpaid position. Members of the Board, although appointed by local officials, are not bound to stay on the Board, and can choose to withdraw and resign at their own discretion. However, replacing Board members is not an easy task and requires an appointment by the Mayor of Trenton, with the advice and consent of the City Council.

17. The difficulty in replacing MS. Kersey, not only as a member of the Board, but an individual with the knowledge and background of the Debtor's history and affairs resulted in the Debtor being mindful of the need to retain Ms. Kersey during the Chapter 11 process.

18. After the commencement of the Case, and throughout the sale process, the Board quickly realized the Ms. Kersey's involvement in the Case was a full-time job, requiring her attention seven (7) days a week. Starting in November, 2013, the Board acknowledging Ms.

Kersey's commitment, began discussion to develop a bonus plan to incentivize Ms. Kersey to stay with the Debtor through and after the critical sale process, especially given the fact that Ms. Kersey was required to choose between being on the Board of the Debtor or being on the Board of the Trenton Parking Authority.

19. Although the KERP has been a topic of discussion by the Board since November, 2013, the Board recognized its priorities in ensuring the sale of the Hotel be completed, and did not prioritize the KERP for Ms. Kersey. Now that the sale is complete, the Debtor is seeking approval of the KERP for Ms. Kersey.

20. Upon approval of the KERP by the Board, the Debtor engaged in discussions with its senior secured lender (the "Bond Trustee"), the Creditors' Committee, and various other interested parties including the City of Trenton and the State of New Jersey regarding the terms of the KERP. The Debtor is in continued discussions with these parties Creditors' Committee regarding the terms of and their support for the KERP.

21. Under the KERP, Ms. Kersey would be compensated $50 per hour for her time committed throughout this case, up to $40,000. Ms. Kersey has worked no less than seven (7) days a week, and a minimum of forty (40) hours per week on this case, in most instances, more. The Case is now fifteen (15) weeks old, and the Debtor expects the Case to be fully administered and closed by the end of February, 2014, for a total of twenty-two (22) weeks. At a rate of $50.00 per hour, 40 hours a week, for 22 weeks, the total estimated compensation due to Ms. Kersey would total just over the $40,000, at $44,000.

22. In furtherance of discussion with the Bond Trustee, Ms. Kersey's compensation would be subject to the Court's Administrative Order Establishing Procedures for Interim

7

Compensation and Reimbursement of Expenses of Professionals [ECF No. 70](the

"**Administrative Order**"), so that Ms. Kersey would be required to, *inter alia:*

  a. present to the Debtor and other Notice Parties (as defined in the Administrative Order) a Monthly Statement providing a narrative of the services performed, with a subsequent Review Period prior to payment, and payment thereafter if there is no timely notice of an objection. If the amount of payment / reimbursement sought in any month is less than $5,000, the Review Period need not apply and the Debtor can immediately remit the payment to Ms. Kersey after providing the Monthly Statement to the Notice Parties.

  b. In the event an objection is filed which remains to be unresolved, Ms. Kersey shall make a formal application to this Court seeking authorization and approval of the payment.

  c. Ms. Kersey, like other professionals in this case, will be required to file a formal application with this Court at the conclusion of this case, unless the total amount of payment sought by Ms. Kersey is less than $25,000.

  23. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." To approve the use of estate property under section 363(b)(1) of the Bankruptcy Code, a debtor is required to show that the decision to use the property outside of the ordinary course of business was based on the debtor's business judgment. See In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a 363(b) application must find a good business reason to grant such application); See also In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring "some articulated business justification" to approve the use, sale or lease of property outside the ordinary course of business); In re Ionosphere Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is "a good business reason"); In re Global Crossing Ltd., 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003).

24. The business judgment rule shields a debtor's management's decisions from judicial second guessing. In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) (a presumption of reasonableness attaches to a Debtor's management decisions" and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth). Once a debtor articulates a valid business justification, the law vests the debtor's decision to use property outside of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations omitted), appeal dismissed, 3 F.3d 49 (2d Cir. 1993). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

25. As set forth hereinabove, the Debtor believes that the implementation of the KERP is a proper exercise of the Debtor's business judgment and is in the best interests of its estate and the interests of all stakeholders in this chapter 11 case. Since the sale of the Hotel and the termination of Marshall as the Debtor's management, the Debtor is left with no employees and no executive to complete the wind-down. While the Debtor would ultimately be able to replace Ms. Kersey with a new Board member, the time it would take to replace Ms. Kersey would severely impact the strategy and timeline in this case, costing the Debtor's estate significant monies in sustaining operations while the sale is delayed. If Ms. Kersey were to leave her position on the Board, the Debtor would in all likelihood, request the appointment of a Chapter 11 Trustee to administer the Debtor's affairs, which would certainly cost more to the

9

estate than the modest $50.00 per hour the Debtor seeks to compensate Ms. Kersey. As a result, the Debtor believes it is appropriate to provide additional compensation to Ms. Kersey as she was critical to the sale and liquidation process in in this case, and is critical and necessary to complete the wind-down of the Debtor's affairs. The Debtor believes it is fair to properly compensate Ms. Kersey for her invaluable assistance and ensure that she does not leave the Debtor's Board during this critical wind-down period.

26. Courts in this circuit have recognized that programs such as the KERP are highly effective in retaining key executives and thus maximizing value of the debtor's estate and, accordingly, have approved similar retention programs. See, e.g., In re Nobex Corporation, 2005 WL 3763169 (Bankr. D. Del.)

27. Accordingly, the Debtor submits that implementing the KERP is a valid exercise of the Debtor's business judgment and that approval of the KERP is in the best interests of Debtor's stakeholders. Section 503(c)(3) of the Bankruptcy Code does not preclude approval of the KERP. This "catch all" provision of the 2005 amendments to compensation procedures in chapter 11 cases prohibits, in relevant part, transfers made outside the ordinary course of business and not justified by the facts and circumstances of the case. 4 Collier on Bankruptcy ¶ 503.17 (15th ed. rev. 2009). Following the recent decision in In re Borders Group, Inc., 453 B.R. 459 (S.D.N.Y. Apr. 27, 2011), even though the Ms. Kersey is not an employee of the Debtor, the Debtor has analyzed the KERP under section 503(c)(3) of the Bankruptcy Code because it is not an ordinary course transaction. See In re Borders Group, Inc., 453 B.R. at 473.

28. Courts that have analyzed the prohibition on "other transfers" to certain categories of employees set forth in section 503(c)(3) of the Bankruptcy Code have applied the same

10

standard under that section as they do under section 363(b) of the Bankruptcy Code: namely, whether the decision to use estate property outside of the ordinary course of business is based on the debtor's business judgment. See In re Dana Corp, 358 BR 567, 576 (Bankr.S.D.N.Y. 2006), citing Nobex, 2006 Bankr. LEXIS 417 (Bankr. D. Del. Jan. 19, 2006) (the test for evaluating a compensation proposal under section 503(c)(3) of the Bankruptcy Code is the "sound business judgment" test); see also Nobex, (Bankr. D. Del. Jan. 12, 2006), Hr'g Tr. at 86-87 (concluding that the standard under section 503(c)(3) of the Bankruptcy Code was "quite frankly nothing more than a reiteration of the standard under [section] 363 [of the Bankruptcy Code]...the business judgment of the debtor").

29. The KERP Satisfies the Nobex Factors. The court in Nobex set forth several factors that courts typically consider when determining whether the "business judgment" standard is met for section 503(c)(3) purposes:

    a. Whether the executive's skills and expertise were critical to implementation of the case;

    b. Whether the duties of the executive have been expanded;

    c. Whether the debtor consulted with its professionals and other interested parties in determining the incentives were necessary, and these parties participated in the negotiation of the incentives;

    d. The efforts of the executive would extend beyond their ordinary course duties;

    e. The executive had committed to continue their employment even if no incentive pay is offered;

    f. The incentives arise out of the debtor's specific situation and desire to aggressively pursue its case only this executive could accomplish; and

      g.  The proposed incentives were the exercise of "sound business judgment by the debtor and were not proposed to retain the executives and or to provide severance.

30.    Here, those standards have been met.

31.    *First*, Ms. Kersey's position as Chairwoman of the Board is an unpaid volunteer position, with an assumingly minimum time commitment. However, since the Chapter 11 filing, that has not been the case. Ms. Kersey has been required to attend to the operations and affairs of the Debtor on a daily basis in order to expeditiously market and sell the Hotel. Certainly, the efforts and duties of Ms. Kersey have been expanded by virtue of this case.

32.    *Second*, Ms. Kersey's knowledge of the history of the Debtor, its debt structure, vendors and contracts made Ms. Kersey an instrumental person with the intimate knowledge and detail needed to streamline this case.

33.    *Third*, Ms. Kersey has committed to providing services to the Debtor notwithstanding this KERP compensation. To date, Ms. Kersey has resigned from another position on the Board of the Trenton Parking Authority in order to fulfill her obligations to the Debtor, and has continued to dedicate her time and energy without any compensation to date.

34.    *Fourth*, the Debtor has consulted with its professionals regarding the terms of the KERP, and have further discussed these terms with the Bond Trustee, who has provided the Debtor with certain comments and requirements relating to the KERP, including a monetary limit, as well as the requirement to comply with the Administrative Order.

35.    *Lastly*, based upon the foregoing reasoning, it is the Debtor's business judgment that the KERP compensation to Ms. Kersey is fair, reasonable, and well deserved.

36. As set forth above, implementing the KERP has sound business purpose: (a) to maximize value for all parties in interest in these chapter 11 cases and (b) retain and fairly compensation Ms. Kersey for her dedication and efforts to expeditiously sell the Debtor's assets. Thus, the KERP satisfies section 503(c)(3) of the Bankruptcy Code because, as discussed above, the implementation of the KERP is a proper exercise of the Debtor's business judgment and is justified by the facts and circumstances of this chapter 11 Case.

## NOTICE

37. Notice of this Motion has been provided to (i) Office of the United States Trustee; (ii) the Debtor's secured creditors, or their counsel; (iii) the Committee of Unsecured Creditors; and (iv) parties who have filed notices of appearance. The Debtor submits that said notice is adequate and proper.

## CONCLUSION

38. For the foregoing reasons, the Debtor submits that cause exists to grant the relief requested in this Motion.

39. No prior request for the relief sought herein has been made heretofore.

(The remainder of this page is intentionally left blank.)

**WHEREFORE**, the Debtor requests that the Court authorize the KERP and enter an Order authorizing the Debtor to pay Joyce Kersey, Chairwoman of the Board a stipend for work performed in this chapter 11 case pursuant to §§363(b)(1) and 503(c)(3) of the Bankruptcy Code, together with such other and further relief as to this Court seems just and proper.

Respectfully Submitted,

      **WONG FLEMING**
      *Counsel to the Debtor and Debtor-in-Possession*

      By:   /s/ Gregory G. Johnson
          Gregory G. Johnson, Esq.

      -and-

      **DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP**
      *Co-Counsel to the Debtor and Debtor-in-Possession*

      By:  /s/ Julie Cvek Curley
          Julie Cvek Curley, Esq.

Dated: January 1, 2014